UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
———————————————————————

ANTHONY JAMES PARTON

                          Plaintiff,

v.                                              Case No. 5:15-CV-0142
                                                (GTS)
COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
———————————————————————

APPEARANCES:                              OF COUNSEL:

OLINSKY LAW GROUP                         HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
300 S. State Street, Suite 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.               GRAHAM MORRISON, ESQ.
OFFICE OF REG'L GEN. COUNSEL
– REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

        Currently before the Court, in this Social Security action filed by Anthony James Parton

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on

the pleadings.  (Dkt. Nos. 10, 11.)  For the reasons set forth below, Plaintiff's motion for

judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is

granted.

## I.      RELEVANT BACKGROUND

### A.      Factual Background

Plaintiff was born on October 12, 1967.  Plaintiff graduated from high school with special education, and has worked as an electronics assembler.  Generally, Plaintiff's alleged disability consists of fetal alcohol syndrome and a learning disability.  Plaintiff's alleged onset date is April 5, 2009, and his date last insured is December 31, 2014.

### B.      Procedural History

On July 5, 2011, Plaintiff applied for Disability Insurance Benefits, and on March 18, 2013, Plaintiff applied for Supplemental Security Income.  On August 7, 2013, Plaintiff appeared in a video hearing before the ALJ, Edward J. Pitts.  (T. 61-86.)  On September 12, 2013, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 17-32.)  On December 19, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)

### C.      The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law.  (T. 22-28.)  First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2014, and has not engaged in substantial gainful activity since April 5, 2009, the alleged onset date.  (T. 22.)  Second, the ALJ found that Plaintiff's borderline intellectual functioning was a severe impairment, but that Plaintiff's fetal alcohol syndrome and broken leg were not severe impairments.  (T. 22-23.)  Third, the ALJ found that Plaintiff's severe impairments, alone or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1.  (T. 23-24.)  The ALJ considered Listing 12.05.  (*Id.*)  Fourth, the ALJ found that Plaintiff had the residual functional

2

capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c), 416.967(c) except that he is limited to simple, routine unskilled work. (T. 24-27.) Fifth, the ALJ found that Plaintiff is capable of performing his past relevant work as an electronics assembler. (T. 27.) Sixth, the ALJ found in the alternative that if Plaintiff could not perform his past relevant work, Medical-Vocational Rule 203.25 directs a finding of "not disabled." (*Id.*)

### D.     The Parties' Briefings on Their Cross-Motions

Plaintiff makes four arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues that the ALJ's step four determination that Plaintiff could perform his past relevant work as an electronic assembler is erroneous because the ALJ failed to discuss the mental requirements of the job and the RFC conflicts with the DOT. (Dkt. No. 10, at 7-8 [Pl.'s Mem. of Law].) Plaintiff argues that the ALJ's RFC was not supported by substantial evidence because the ALJ erred as a matter of law by affording no weight to the opinion of Dr. Caldwell, and to a portion of the opinion of Dr. Coleman. (*Id.* at 8-12.) Third, Plaintiff argues that the ALJ's credibility determination was not supported by substantial evidence. (*Id.* at 12-14.) Fourth, and finally, Plaintiff argues that the ALJ erred as a matter of law by failing to consult a vocational expert when making his alternative finding at step five. (*Id.* at 14-15.)

Defendant makes four arguments in support of her motion for judgment on the pleadings. First, Defendant argues that the ALJ properly determined that there was work that Plaintiff could perform. (Dkt. No. 11, at 4-5 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ properly weighed the medical evidence. (*Id.* at 5-8.) Third, Defendant argues that the ALJ properly evaluated Plaintiff's credibility. (*Id.* at 8-9.) Fourth, and finally, Defendant argues that the ALJ properly determined that Plaintiff was not disabled. (*Id.* at 9.)

## II.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial

4

evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III.    ANALYSIS

For the ease of analysis, Plaintiff's arguments will be reorganized below.

#### A.    Whether the ALJ Erred in Assessing the Medical Opinions of Dr. Coleman and Dr. Caldwell

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 11, at 5-8 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

When controlling weight is not afforded to the opinion of a treating physician, or when assessing a medical opinion from another source, the ALJ should consider the following factors to determine the proper weight to afford the opinion: (1) the source's examination relationship and treatment relationship, including the length, nature, and extent of the treatment relationship, if applicable, (2) the opinion's supportability, (3) the opinion's consistency with the record as a whole, (4) the source's specialization, if any, and (5) other factors, such as the source's knowledge of disability programs and familiarity with the case record.  20 C.F.R. §§ 404.1527(c), 416.927(c); *Halloran*, 362 F.3d at 32 (listing regulatory factors).

#### i.    Independent Psychological Examiner, Stephen Coleman, Psy.D.

On December 10, 2010, Dr. Coleman opined that Plaintiff was able to carry out short and simple instructions, sustain an ordinary routine without special supervision, make simple work-related decisions, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in a routine work setting, deal with normal work stress, and be

aware of normal hazards and take appropriate precautions. (T. 25.) Dr. Coleman opined that Plaintiff would be off task 20 percent of the time because of difficulties with his processing speed and would miss one day of work per month. (*Id.*)

The ALJ afforded significant weight to Dr. Coleman's opinion that Plaintiff was limited to simple and unskilled work. (T. 26.) However, the ALJ afforded no weight to Dr. Coleman's opinion that Plaintiff would be off task 20 percent of the time and would miss one day of work per month, reasoning that there was no basis for these limitations in Dr. Colman's clinical evaluation or anywhere else in the record. (T. 26-27.) The ALJ further reasoned that these limitations were not consistent with Plaintiff's work record or testimony. (*Id.*) Finally, the ALJ cited other medical opinion evidence of record that was inconsistent with these limitations. (T. 26.) For example, the ALJ noted that consultative examiner, Jeanne Shapiro, Ph.D., opined that Plaintiff could work up to 40 hours a week. (*Id.*) Additionally, Dr. Shapiro opined that Plaintiff had "normal functioning," or no evidence of limitation, in following, understanding, and remembering simple instructions and directions; maintaining attention and concentration for rote tasks; regularly attending to a routine and maintaining a schedule; and performing low stress and simple tasks. (T. 320.)

It is the duty of the ALJ, not a medical source, to formulate a plaintiff's RFC. 20 C.F.R. §§ 404.1545, 416.945. In formulating a plaintiff's RFC, an ALJ is not required to strictly adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *Zongos v. Colvin*, 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was

within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion).  Further, an ALJ is not required "explicitly to reconcile every conflicting shred of medical testimony."  *See Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (finding that the ALJ was not required to reconcile two apparently inconsistent medical opinions; it was sufficient that the ALJ noted that he carefully considered the exhibits presented in evidence in reaching his decision).

Moreover, the ALJ properly applied the regulations in evaluating Dr. Coleman's opinion by considering his professional credentials, examining relationship with Plaintiff, examination notes, and citing inconsistencies between the opinion and other medical evidence in the record pursuant to 20 C.F.R. §§ 404.1527(c), 416.927(c).  (T. 25-27.)  Where, as here, an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to review explicitly each and every factor of the regulation.  *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (holding that, where a plaintiff challenged the ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527[c], "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").

Accordingly, the ALJ's assessment of Dr. Coleman's opinion was supported by substantial evidence.

### ii.     Consultative Psychological Examiner, Christina Caldwell, Psy.D.

On January 3, 2013, Dr. Caldwell performed a mental status examination of Plaintiff that yielded "abnormal" results in attention and concentration, cognitive functioning, and insight.  (T. 26.)  The examination yielded "normal" results in general appearance, mood, affect, orientation, speech and language, thought process, recent and remote memory skills, and judgment.  (*Id.*)  Plaintiff's WAIS testing yielded a full scale IQ score of 61.  (*Id.*)  Dr. Caldwell assessed Plaintiff

with limited intellectual functioning, and a Global Assessment of Functioning ("GAF") score of 51.[1]  (*Id.*)

Dr. Caldwell opined that Plaintiff appeared permanently disabled, his condition was not expected to improve, and he was unable to participate in any activities.  (T. 327.)  Dr. Caldwell opined that Plaintiff was "very limited" in performing complex tasks independently, and "moderately limited" in following, understanding, and remembering simple instructions and directions; maintaining attention and concentration for rote tasks; and attending to a routine and maintaining a schedule.[2]  (T. 326.)  Dr. Caldwell opined that Plaintiff had "normal functioning" in performing low stress and simple tasks.  (*Id.*)

The ALJ afforded no weight to Dr. Caldwell's opinion that Plaintiff was permanently disabled due to intellectual disability because (1) it is an opinion reserved to the Commissioner, (2) it does not include a function by function analysis, and (3) a low IQ is not per se a totally disabling condition.  (T. 26.)

First, the ALJ correctly noted that Dr. Caldwell's statement that Plaintiff was totally disabled is a statement on an issue reserved for the Commissioner, which is never entitled to controlling weight or special significance.  20 C.F.R. §§ 404.1527(d)(1), 416.1527(d)(1); SSR 96-5p, 1996 WL 374183, at *1 (July 2, 1996); *see also Snell v. Apfel,* 177 F.3d 128, 133 (2d Cir. 1999) ("A treating physician's statement that the claimant is disabled cannot itself be determinative.").

---

[1]    The GAF scale "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  *Pollard v. Halter,* 377 F.3d 183, 186 n. 1 (2d Cir. 2004).  A GAF score of 51 to 60 indicates moderate symptoms (*e.g.,* flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.,* few friends, conflicts with peers or co-workers.) *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 2000) (DSM-IV).

[2]    The assessment form defined "very limited" as unable to function 75 percent or more of the time, and "moderately limited" as unable to function fifty percent of the time.  (T. 326.)  The assessment form defined "normal functioning" as no evidence of limitation.  (*Id.*)

Second, the ALJ properly applied the regulations in evaluating Dr. Caldwell's opinion by considering her professional credentials, examining relationship with Plaintiff, examination notes, and other substantial medical evidence of record that was inconsistent with her opinion, including the opinion of Dr. Shapiro.  20 C.F.R. §§ 404.1527(c), 416.927(c).  (T. 25-27.)  Where, as here, an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to review explicitly each and every factor of the regulation.  *Atwater*, 512 F. App'x at 70 (2d Cir. 2013).

For these reasons, the Court finds that the ALJ's assessment of the opinions provided by Dr. Coleman and Dr. Caldwell was supported by substantial evidence, and remand is not required on this basis.

### B.     Whether the ALJ's RFC Finding was Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 11, at 5-8 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

It is the duty of the ALJ, not a medical source, to formulate a plaintiff's RFC.  20 C.F.R. §§ 404.1545, 416.945.  RFC is defined as

> what an individual can still do despite his or her limitations . . . .
> Ordinarily, RFC is the individual's maximum remaining ability to do
> sustained work activities in an ordinary work setting on a regular and
> continuing basis, and the RFC assessment must include a discussion
> of the individual's abilities on that basis.  A regular and continuing
> basis means 8 hours a day, for 5 days a week, or an equivalent work
> schedule.

*Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir. 1999).  "In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work."  *Domm v. Colvin*,

12-CV-6640, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. §

404.1545[a][3]-[4]).  The ALJ must consider medical opinions and facts, physical and mental

abilities, non-severe impairments, and the plaintiff's subjective evidence of symptoms.  20

C.F.R. §§ 404.1545(b)-(e), 416.945(b)-(e).  The ALJ must consider RFC assessments made by

acceptable medical sources and may consider opinions from other sources, such as therapists and

social workers, to show how a claimant's impairments may affect his or her ability to work.  20

C.F.R. §§ 404.1513(c)(d), 416.913(c)(d).  Finally, an ALJ's RFC determination "must be set

forth with sufficient specificity to enable [the Court] to decide whether the determination is

supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Here, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to

perform medium work as defined in 20 C.F.R. §§ 404.1567(c), 416.967(c)[3] except that he is

limited to simple, routine unskilled work.[4]  (T. 24-27.)  Plaintiff argues that ALJ's RFC

determination was not supported by substantial evidence.  (*Id.* at 8-12.)  The Court finds that the

ALJ's RFC determination was supported by substantial evidence, including the opinions of (1)

consultative psychological examiner, Jeanne Shapiro, Ph.D., and (2) consultative physical

examiner, Kalyani Ganesh, M.D.  (T. 304-10, 318-22, 330-33.)

### i.      Consultative Examiner, Jeanne Shapiro, Ph.D.

On April 13, 2012, Dr. Shapiro opined that Plaintiff had "normal functioning" in

following, understanding, and remembering simple instructions and directions; maintaining

---

[3]      Medium work requires the abilities to sit and stand/walk for six hours, lift 50 pounds occasionally, and lift 25 pounds frequently during an eight-hour workday.  20 C.F.R. §§ 404.1567, 416.967.

[4]      "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."  SSR 85-15, 1985 WL 56857, at *4 (1985).

attention and concentration for rote tasks; regularly attending to a routine and maintaining a schedule; and performing low stress and simple tasks.[5]  (T. 320.)  Dr. Shapiro opined that Plaintiff would be "moderately limited" in performing complex tasks independently, and using public transportation; and was "very limited" in no areas of functioning.[6]  (*Id.*)

On August 20, 2012, Dr. Shapiro conducted an intelligence evaluation of Plaintiff and reported that IQ testing yielded a full scale IQ score of 71.  (T. 304-07.)  Dr. Shapiro diagnosed Plaintiff with borderline intellectual functioning and assessed that difficulties were caused by Plaintiff's cognitive deficits.  (T. 306-07.)  Nonetheless, Dr. Shapiro opined that Plaintiff appeared capable of following and understanding simple directions and instructions, performing simple and some tasks independently as long as the complex tasks are within his level of cognitive abilities, maintaining attention and concentration, maintaining a regular schedule, learning many new tasks, making appropriate decisions, relating adequately with others, and appropriately dealing with stress.  (T. 306.)

An ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability.  20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e), 416.912(b)(6), 416.913(c), 416.927(e); *see also Little v. Colvin*, 14-CV-63, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."); *Cobb v. Comm'r*, 2014 WL 4437566, at *6 (N.D.N.Y. Sept. 9, 2014).

[5]    The assessment form defined "normal functioning" as no evidence of limitation.  (T. 320.)

[6]    The assessment form defined "very limited" as unable to function 75 percent or more of the time, and "moderately limited" as unable to function fifty percent of the time.  (T. 320.)

Accordingly, the Court finds that Dr. Shapiro's opinion provides substantial evidence to support the ALJ's mental RFC finding that Plaintiff could perform simple, routine unskilled work.  (T. 24.)

### ii.    Consultative Physical Examiner, Kalyani Ganesh, M.D.

On January 3, 2010, Dr. Ganesh opined that Plaintiff had "no evidence of limitation" in his ability to walk, stand, sit, push, pull, bend, see, hear, speak, hear, use his hands, or climb for more than four hours during a workday.  (T. 331-33.)  Dr. Ganesh further opined that Plaintiff had "no evidence of limitation" in his ability to lift 50 pound occasionally and 25 pounds frequently during a workday.  (*Id.*)  Dr. Ganesh noted that Plaintiff could perform only a half squat and had strabismus in the right eye, but there was no evidence of physical limitation in any other area.  (T. 26.)  Accordingly, Dr. Ganesh opined that Plaintiff could work for up to 40 hours at a job without physical restriction.  (*Id.*)

An ALJ is entitled to rely on opinions of State agency medical consultants and their opinions may constitute substantial evidence where, as here, they are consistent with the record as a whole.  20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e), 416.912(b)(6), 416.913(c), 416.927(e); *see also Little,* 2015 WL 1399586, at *9.  Therefore, Dr. Ganesh's opinion provides substantial evidence supporting the ALJ's physical RFC determination that Plaintiff could perform medium work.  (T. 24, 26.)

For these reasons, the ALJ's RFC was supported by substantial evidence, and remand is not required on this basis.

### C.    Whether the ALJ Erred in Evaluating Plaintiff's Credibility

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendants's memorandum of law.  (Dkt. No. 11, at 8-9 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

A plaintiff's allegation of pain is "entitled to great weight where . . . it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 [2d Cir. 1992]). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271 (citing SSR 96-7p, 1996 WL 374186, at *2 [July 2, 1996].)

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Rockwood*, 614 F. Supp. 2d at 271 (citing §§ 404.1529[c][3], 416.929[c][3]). Further, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's

14

symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 [2d Cir. 1983]).

Here, the ALJ found that Plaintiff's medically determinable impairment could reasonably be expected to cause the alleged symptoms, however his statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. (T. 25.) Throughout the decision, the ALJ articulated the inconsistencies that he considered in assessing the allegations of Plaintiff's symptoms, and in determining that Plaintiff is not as limited as alleged. (T. 22-27.)

First, the ALJ considered medical evidence, including medical opinion evidence, that was inconsistent with Plaintiff's allegations of disabling symptoms. (*Id.*) For example, the ALJ noted that Dr. Coleman opined that Plaintiff was able to carry out short and simple instructions, sustain an ordinary routine without special supervision, make simple work-related decisions, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in a routine work setting, deal with normal work stress, and be aware of normal hazards and take appropriate precautions. (T. 25.) The ALJ also considered the opinions of Dr. Shapiro and Dr. Ganesh that were inconsistent with Plaintiff's allegations of disabling symptoms, as discussed above in Part.III.B. of this Decision and Order. (T. 26.)

Second, the ALJ considered Plaintiff's activities of daily living that were inconsistent with his allegations of disabling symptoms. (T. 25.) For example, the ALJ noted that Plaintiff testified that he has no problem using the bus, indicating that he is capable of figuring out the bus schedule. (*Id.*) The ALJ further noted that Plaintiff lives with two roommates, cleans his own room, cooks for his roommates on occasion, and goes shopping with his roommates. (T. 23.) Finally, the ALJ noted that Plaintiff worked as an electronics assembler for over twenty

years and had a "lengthy and excellent work history prior to being laid off from his job in 2009." (T. 27.)

When the evidence of record "permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). Here, the ALJ complied with the Regulations and articulated the inconsistencies upon which he relied in discrediting Plaintiff's allegations of disabling impairments.

For these reasons, the ALJ's credibility assessment was supported by substantial evidence, and remand is not required on this basis.

     **D.**     **Whether the ALJ Erred in Determining that Plaintiff Could Perform His Past Relevant Work as an Electronics Assembler**

After carefully considering the matter, the Court answers this question in the negative in part for the reasons stated in Defendant's memorandum of law. (Dkt. No. 11, at 4-5 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

At step four of the sequential evaluation, the ALJ must determine whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Past relevant work is work that was performed within the past 15 years, was substantial gainful activity, and lasted long enough to learn to do the job. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the claimant has the RFC to perform his past relevant work, the claimant is not disabled. If the claimant is unable to perform any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth, and final, step.

Here, Plaintiff argues that the ALJ erred in determining that Plaintiff could perform his past relevant work as an electronics assembler. (Dkt. No. 10, at 7 [Pl.'s Mem. of Law].) Plaintiff argues that he would not be able to perform the electronics assembler job because it has a specific vocational preparation ("SVP") level of four, indicating that the job is semi-skilled, and the ALJ limited Plaintiff to unskilled work. (*Id.*) Plaintiff argues that the ALJ did not explain this discrepancy between his RFC and the SVP level for this job according to the DOT. (*Id.*)

SVP is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility necessary for average performance in a specific job-worker situation. *Dictionary of Occupational Titles,* App. C, 1991 WL 688702 (4th ed., 1991). Specific vocational training includes vocational education, apprenticeship training, in plant training, on the job training, and essential experience in other jobs. (*Id.*)

The Dictionary of Occupational Titles provides that a job with a SVP level of four, such as the electronics assembler position, requires "over 3 months up to and including 6 months" for a typical worker to learn the techniques, acquire the information, and develop the facility necessary for average performance in a specific job-worker situation. (*Id.*) Here, the ALJ noted that Plaintiff worked as an electronics assembler for over twenty years and performed the position at substantial gainful activity levels. (T. 27.) Accordingly, it was reasonable for the ALJ to find that Plaintiff had already performed the job long enough to learn it, and therefore find that Plaintiff could perform his past relevant work. Thus, the ALJ's determination that Plaintiff could perform his past work as an electronics assembler was supported by substantial evidence.

In any event, the ALJ properly found that, even if Plaintiff could not perform his past relevant work, Medical-Vocational Rule 203.25 directs a finding of "not disabled" at step five.

(T. 27.)  Therefore, even if the ALJ erred in determining that was not disabled because Plaintiff could perform his past work at step four, the ALJ properly found that Plaintiff was not disabled at step five.  Notably, remand for an error is not required when application of the correct legal principles could only lead to the same conclusion.  *Zabala,* 595 F.3d at 409.  Accordingly, remand is not required on this basis.

      **E.**      **Whether the ALJ Erred in Making his Alternative Finding at Step Five**

      After carefully considering the matter, the Court answers the negative in part for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 11, at 9-10 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

      At step five of the sequential process, the burden shifts to the Commissioner to establish that there are a significant number of jobs in the national economy that a plaintiff can perform based on his or her RFC, age, education, and past relevant work.  20 C.F.R. § 405.1560(c)(1); *Butts v. Barnhart,* 388 F.3d 377, 383 (2d Cir. 2004); *Edwards v. Astrue,* 07-CV-0898, 2010 WL 3701776, at *12 (N.D.N.Y. Sept. 16, 2010).  The Commissioner can usually establish that there is other work that Plaintiff can perform by reliance on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grids." *Baldwin v. Astrue*, 07-CV-6958, 2009 WL 4931363, at *20 (S.D.N.Y. Dec. 21, 2009).

      When a plaintiff suffers from nonexertional limitations that significantly limit the plaintiff's employment opportunities, exclusive reliance on the Grids is inappropriate.  *Baldwin*, 2009 WL 4931363, at *27 (citing *Bapp v. Bowen*, 802 F.2d 601, 605 [2d Cir. 1986]).  A plaintiff's range of potential employment is significantly limited when the plaintiff "suffers from the additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment

opportunity." *Baldwin,* 2009 WL 4931363, at *27.  Notably, "the mere existence of a non-exertional limitation does not automatically preclude reliance on the guidelines." *Zabala,* 595 F.3d at 410-11 (citing *Bapp,* 802 F.2d at 603.)

Plaintiff essentially argues the ALJ erred by not consulting a vocational expert at step five because the ALJ failed to account for Plaintiff's full range of nonexertional limitations. (Dkt. No. 10, at 14-15 [Pl.'s Mem. of Law].)  More specifically, Plaintiff argues that the ALJ failed to account for Plaintiff's nonexertional limitations beyond "simple routine unskilled work" that were included in the opinions of Dr. Caldwell and Dr. Coleman.  (*Id.*)  As discussed above in Part III.A. and Part III.B. of this Decision and Order, the ALJ properly assessed the medical evidence of record and determined that Plaintiff had the mental RFC to perform simple routine unskilled work at the medium exertional level.  (T. 24-27.)  Accordingly, based on Plaintiff's age, education, and work experience, the ALJ permissibly relied on Medical-Vocational Rule 203.25 to determine that Plaintiff was not disabled at step five.  *See Zabala,* 595 F.3d at 411 (finding that the ALJ permissibly relied on the Medical-Vocational Guidelines without consulting a vocational expert at step five where the plaintiff's mental condition did not limit the plaintiff's ability to perform unskilled work, including carrying out simple instructions).

For these reasons, the ALJ's step five determination was supported by substantial evidence, and remand is not necessary on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **<u>AFFIRMED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated: June 20, 2016
       Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge